FRENCH SPIRAL SPRING CO., Limited, *v.* NEW ENGLAND CAR TRUST and others.

*(Circuit Court, D. Connecticut. 1887.)*

1. ORDERS—CONSTRUCTION.
    The defendants accepted an order of a third person in favor of plaintiffs to the amount of $2,300, payable out of certificates due the third person under a contract between him and the defendants, and specified in the order, "the same not to be due until September 1st." *Held*, the words, "the same not to be due," referred to certificates, and not to the order, and that defendants paid at their peril any person other than plaintiffs for work, the certificates for which, under the contract, would not become due until on and after September 1st.

2. CORPORATIONS—BY-LAWS—CORPORATE CONTRACT.
    An acceptance of an order by the New England Car Trust, to pay money already provided for by a contract with the company, does not come within article 4 of the articles of association of the car trust, providing that, in order to bind the company, all contracts involving liabilities for the payment of money shall be in writing, and signed by at least three members of the board of managers.

Intervening Petition in *Brassey* v. *New York & N. E. R. Co.*
*Henry M. Rogers*, for petitioner.
*Simeon E. Baldwin*, for defendant

SHIPMAN, J. The question in this case arises upon the petitioner's demurrer to the defendant's answer. The New England Car Trust entered into a contract with Blain Bros., by which the latter agreed to make and to furnish to the car trust 500 cars, to be delivered to its trustee at the average rate of 48 cars per week, beginning on May 15, 1883, and the car trust agreed to pay for the same at the rate of $446.31 per car, payable in its certificates, as the cars were delivered in lots of 10, within one week after the receipt of three specified documents. Blain Bros. desired to purchase springs for said cars from the petitioner, but said company

refused to sell said springs upon the sole security of said Blain Bros., but agreed to sell them unto the said firm, provided they would assign to the petitioner a portion of the price to be paid by said car trust to them upon the delivery of said cars, and provided the order making said assignment should be accepted in advance by the said car trust. Thereupon Blain Bros. delivered to the spring company the following order upon the New England Railroad Company, the company which was to lease and purchase said cars from the car trust:

HUNTINGDON, PA., June 30, 1883.

DEAR SIR: Please pay the French Spiral Spring Co., Limited, or order September 5th inst., twenty-three hundred dollars (2,300) out of the proceeds of our settlement for coal cars to be furnished your company upon our present contract, it being understood we have sixty days' time upon the purchase.

Very respectfully, BLAIN BROS.

S. M. FELTON, Jr.,
General Manager N. Y. & N. E. R. R. Co., Boston.

The car trust returned to the spring company the following acceptance:

BOSTON, July 14, 1883.

*French Spiral Spring Company, Limited, Pittsburgh, Pa.—*GENTLEMEN: In answer to your favor of the second instant, inclosing order from Blain Bros., the managers of the New England Car Trust accept the order for certificates to the amount of twenty-three hundred dollars, (2,300,) payable out of certificates due Blain Bros. under the contract between Blain Bros. and said car trust; the same not to be due until September 1st. * * *

Yours, truly, WILLIAM CALEB LORING, Secretary.

Blain Bros. delivered no cars to the car trust after August 24, 1883, on which date they had delivered in all 370 cars. On August 29, 1883, the car trust paid for the last lot of cars, 10 in number, which were delivered on said August 24th, by which payment it paid in full, according to the terms of said contract, for all said 370 cars, and neither on September 1st nor on September 5th owed Blain Bros. anything.

The question in the case arises upon the terms of the acceptance. The petitioner claims that it was a present acceptance for the sum of $2,300 due Blain Bros., but, if not, that it was a present acceptance for the sum of $2,300, payable on September 1st, the money to be payable in certificates. The defendant says that it was an acceptance for $2,300, payable only in certificates which were to become due to Blain Bros., under the contract, on and after September 1st. On June 30th, the date of Blain Bros.' order, they were delivering cars under a contract for the purchase of 500 cars, which contract called for an average delivery of 8 cars per working day, and which provided for the payment by the car trust, as the cars were delivered in lots of 10, within one week after the receipt of the specified papers. Ninety-five cars had then been delivered. More than one payment per week would, under the contract, naturally be made. Blain Bros. were to have 60 days' credit, and payment to the spring company was to be by the terms of the order, on September 5th. The car trust accepts the order "payable out of cer-

tificates due Blain Bros. under the contract between Blain Bros. and said car trust, the same not to be due until September 1st." This was an acceptance of an order payable September 5th, out of a fund which was to become due from week to week, if the contract was performed; and, in case of its non-fulfillment by Blain Bros., they were liable in a specified sum, as damages. Under these circumstances, the car trust accepts the order payable in certificates, due under the contract, the same not to be due until September 1st. The intent of the acceptance was that the payment was to be made in certificates which were to become due Blain Bros., but were not to be due until September 1st. By the acceptance, the car trust promised to pay, but only from those certificates, if any, which became due on and after September 1st. The words "due under the contract" do not imply that the certificates were due at the date of the acceptance, or that payment was to be made out of any certificates thereafter to be due, but mean that payment was to be made out of certificates due Blain Bros. under the contract, when the order was payable, and the words, "the same not to be due," refer to the certificates, and not to the order, and mean that the order was payable out of those certificates which were to become due on and after September 1st, and not out of any certificates which should become due before that date. The acceptance was an agreement to pay in certificates which became due on and after September 1st.

On the twenty-fourth of August, Blain Bros. delivered at Huntingdon, Pennsylvania, 10 cars. Certificates for $4,463.10 were due from the car trust for those cars, within one week after the receipt of the invoice of them, the bill of sale, and a certificate of the general manager of their acceptance. The answer does not show that the certificates for these cars were not due on September 1st, and, allowing the ordinary time for transmission of the papers by mail, it would seem that they would not naturally have been due under the contract until September 1st. On August 29th, 30 certificates which paid for previous deliveries, and the last 10 cars, were delivered to the assignee of Blain Bros. I think that, by the terms of the acceptance, the car trust paid, at its peril, to any other person than the spring company, for any cars, the certificates for which did not become due under the contract until September 1st. The answer sets up the fact that article 4 of the articles of association of the car trust, which was an unincorporated association, provided that "all contracts relating to the business of the association, involving liabilities for the payment of moneys, shall be in writing, and shall be signed on behalf of the association by at least" three members of the board of managers, and by the person with whom such contract shall be made, and that this acceptance was signed by the secretary only, and consequently was not binding upon the association. The contract with Blain Bros. was signed by three managers. The acceptance was not, within the intent of the articles of association, a contract involving a liability for the payment of money, but was simply an assent and agreement in regard to the diversion of money already agreed to be paid into another channel. It did not create a liability for additional money. The demurrer is sustained.